DAVID H. BERNSTEIN (S.B. # 336551)
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Tel:     (415) 738-5700
Fax:     (415) 644-5628
Email:  dhbernstein@debevoise.com

MEGAN K. BANNIGAN* (mkbannigan@debevoise.com)
JARED I. KAGAN* (jikagan@debevoise.com)
NICOLE M. FLORES* (nmflores@debevoise.com)
DANIEL N. COHEN* (dncohen@debevoise.com)
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Tel:     (212) 909-6000
Fax:     (212) 909-6836
*Admitted pro hac vice

*Attorneys for Defendant and Counterclaim-Plaintiff, X CORP.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| DB COMMUNICATIONS LLC D/B/A MULTIPLY, | CASE NO. 3:24-cv-04402-RFL |
| Plaintiff, | **ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS** |
| v. | Honorable Rita F. Lin |
| X CORP., | United States District Judge |
| Defendant. | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| X CORP., | |
| Counterclaim-Plaintiff, | |
| v. | |
| DB COMMUNICATIONS LLC D/B/A MULTIPLY, | |
| Counterclaim-Defendant. | |

## COUNTERCLAIMS ON BEHALF OF DEFENDANT

Defendant and Counterclaim-Plaintiff, X Corp., by and through its undersigned attorneys, submits these counterclaims against Plaintiff and Counterclaim-Defendant DB COMMUNICATIONS LLC D/B/A MULTIPLY ("Multiply").

## PRELIMINARY STATEMENT

1.      X Corp. brings these counterclaims for cancellation of Multiply's federal trademark registration in an "X" design mark (the "Multiply Symbol") and a declaration that, to the extent Multiply owns trademark rights in the letter X, X Corp. does not infringe those rights.

2.      Multiply's federal trademark registration in the Multiply Symbol is subject to cancellation for two independent reasons. First, the registration is void ab initio and should have never issued in the first place. Second, the Multiply Symbol fails to function as a trademark.

3.      Multiply is an advertising agency, founded in 2000, that provides advertising services to its business customers that operate predominately in the beverage industry. Compl. ¶¶ 6, 7. It offers its services under the MULTIPLY name, and is known by its clients as MULTIPLY.

4.      In 2018, Multiply's founder Daniel Baum filed an intent to use trademark application with the United States Patent and Trademark Office ("USPTO") for a stylized "X," Compl. ¶ 29, a take on the 400-year-old universal symbol for the mathematical function of multiplication. Mr. Baum swore under penalty of perjury that "[t]he applicant [Mr. Baum], ha[d] a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application." Ex. A, Baum's Trademark Application.

5.      Mr. Baum, however, did not have the requisite intent to use the Multiply Symbol in his individual capacity. As Multiply concedes in its Complaint, "Baum *and* Multiply decided to create [the Multiply Symbol] to identify Multiply" in promotion of Multiply's goods and services. Compl ¶¶ 26, 27 (emphasis added). Despite the fact that Multiply existed at the time, and that the symbol was intended to be used in connection with Multiply's services, Mr. Baum

filed a trademark application with the USPTO in his own name, not in Multiply's name.  *See* Ex. A, Trademark Application.  Accordingly, Mr. Baum's application was void ab initio pursuant to TMEP § 1201.2.

6.       In 2019, Mr. Baum filed a statement of use with the USPTO representing that the Multiply Symbol was being used in commerce.  The specimen that accompanied the statement of use clearly showed use of the Multiply Symbol in connection with services offered by Multiply, not by Mr. Baum in his individual capacity.  *See* Ex. B, Statement of Use and Specimen.  The USPTO registered the Multiply Symbol on January 21, 2020 to Mr. Baum as an individual registrant, not to Multiply.  *See* Ex. C, Baum's Registration Certificate (identifying the registrant as "Baum, Daniel (UNITED STATES **INDIVIDUAL**)") (emphasis added).

7.       This registration is void ab initio because trademark regulations require that the actual owner of a trademark apply for and register the mark, and further because said ownership is contingent on both the intent to use and sufficient actual use in commerce.  Mr. Baum may be a founder of Multiply, and may have had a role in designing the mark, but he never used the Multiply Symbol in commerce in his individual capacity—nor did he ever intend to do so—so he was not entitled to register the Multiply Symbol in his own name.

8.       In mid-March 2024, in anticipation of litigation with X Corp. and knowing that he did not have standing to sue X Corp., Mr. Baum assigned his personal trademark registration to Multiply.  But because the registration for the Multiply Symbol was never valid, there were no rights to assign.

9.       Mr. Baum's filing errors in his application are fatal to Multiply's purported registered trademark rights, and are not curable by amendment or a snap pre-litigation assignment.  *See* TMEP  § 1201.02(c); 37 CFR § 2.71(d).

10.       Even if Multiply's trademark registration is not void, the Multiply Symbol does not function as a trademark.  The Multiply Symbol is just that—a visual indicator to signify the multiplication symbol that dates back to the 1600s.  It is not a source identifier for Multiply's goods and services.  Rather, it is an ornamental gimmick that accompanies the Multiply brand

name.  The standalone Multiply Symbol is a visual indicator, and simply does not function as a trademark because it does not identify the source of any goods or services provided by Multiply.

11.    Multiply's clients know it as Multiply not X.  And Multiply, not X, identifies the source of Multipy's goods and services.  The specimen of use that Mr. Baum filed with the USPTO proves the point, stating clear as day, "WE ARE MULTIPLY," and includes the Multiply Symbol as mere decoration.



Ex. B, Multiply Statement of Use

12.    The Multiply Symbol is at most a decorative or ornamental addition to Multiply's brand, designed, as the Complaint concedes to be "implicitly associated with the multiplication symbol."  Compl. ¶ 28.  Simply put, the Multiply Symbol does not identify the source of goods and services offered by Multiply, which is a prerequisite to trademark ownership.

13.    Without any valid trademark rights, Multiply has no claim for trademark infringement.  But even if Multiply could establish trademark rights in the Multiply Symbol, X Corp.'s use of "X" on its social networking platform has not caused, and is not likely to cause, confusion with Multiply's alleged use of the Multiply Symbol in connection with its advertising agency, thereby mooting any claim for trademark infringement.

14.    There are over 500 X-formative trademarks registered in Class 35, the class in which the Multiply Symbol is registered.  Many are used in connection with advertising services, many include a distinct stylized "X," each has its own connotation and meaning, and some are even used in connection with other businesses using the term "multiply."  Consumers are accustomed to distinguishing between a variety of X-formative trademarks in this crowded field, making any

confusion with X Corp. unlikely.  Whatever rights, if any, Multiply may have, are not remotely infringed upon by X Corp., when the marks at issue are different, mean different things, are used on different services, and target different customers.

15.     This lawsuit is nothing more than an opportunistic attempt to extract money from X Corp., based on non-existent trademark rights.  The Court should cancel Multiply's trademark registration and declare that X Corp. does not infringe any of Multiply's rights.

**The Parties**

16.     Counterclaim-Plaintiff, X Corp., is a Nevada corporation with a principal place of business in California.

17.     Counterclaim-Defendant, DB COMMUNICATIONS LLC DBA MULTIPLY, is a Virginia limited liability company and upon information and belief, is headquartered in and has its principal place of business in New York.

**Jurisdiction and Venue**

18.     These counterclaims arise under the Federal Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202, and the Lanham Act, 15 U.S.C. §§ 1000 et seq.  Multiply has filed suit against X Corp. asserting federal and common law trademark infringement and unfair competition, and deceptive trade practices under California law.  X Corp. denies that it has infringed any of Multiply's trademark rights or engaged in unfair or deceptive practices.  Based on the foregoing, there is an actual, immediate, and justiciable controversy between X Corp. and Multiply as to the infringement and validity of the marks in question.

19.     This Court has subject matter jurisdiction over these Counterclaims under at least 28 U.S.C. §§ 1331, 1338, 1367, and 2201.

20.     This Court has personal jurisdiction over Multiply at least because it has subjected itself to the jurisdiction of this Court in this case by filing the Complaint.

21.     Venue in this judicial district is proper because Multiply has consented to this venue by asserting claims of trademark infringement here against Counterclaim-Plaintiff.

## SPECIFIC ALLEGATIONS

**MULTIPLY'S REGISTRATION IS VOID AB INITIO**

22.     According to the Multiply Complaint, Mr. Baum founded Multiply in February 2000 as DB Communications LLC and, in October 2015, rebranded to DB Communications LLC d/b/a Multiply. Compl. ¶ 6. Consistent with its identity as MULTIPLY, Mr. Baum worked as an agent of Multiply to create and invest in a stylized version of a multiplication symbol, to use alongside the Multiply name. *See* Compl. ¶¶ 26, 27. The Multiply Symbol was ultimately created in approximately 2016. *Id.*

23.     In 2018, Mr. Baum, in his individual capacity, filed an intent to use trademark application for the Multiply Symbol (pictured right) with the USPTO for advertising agency services, marketing services, and social media marketing, among other services, in Class 35. Upon information and belief, and based on the allegations in the Complaint, Mr. Baum did not have the required bona fide intent to use the Multiply Symbol in commerce—instead it was his intent that Multiply would use the Multiply Symbol in commerce. Compl. ¶ 26, 27, 28, 30. Accordingly, Multiply, not Mr. Baum, should have applied for the trademark.

24.     Mr. Baum's claims that he authorized Multiply to use the Multiply Symbol "in all its marketing and promotional materials, communications, contracts, client deliverables, office space, social media accounts, promotional merchandise, and other brand identifying materials, including the X Dashboard,[1]" Compl. ¶ 30, do not fix the defects in his trademark application.

25.     Multiply is a sophisticated business and knows how to file trademark applications in the proper name of its company. Multiply (as DB Communications, LLC) itself, not Mr. Baum, filed a 2016 application to register its "Multiply" name with the USPTO (although, that registration did not proceed to registration for other reasons). *See* U.S. Ser. No. 87/033,427. In contrast, here,

---

[1]    Mr. Baum holds a separate registration for the "X Dashboard" (Reg. No. 6,048,198) that Multiply discusses in its Complaint. However, no assignment to Multiply was ever recorded with the USPTO website for rights in this mark. While this trademark is not the subject of this dispute, X Corp. contends that any alleged rights in the "X Dashboard" mark are similarly void ab initio.

Multiply was not at all disclosed in Mr. Baum's trademark application for the Multiply Symbol. *See* Ex. A.

26.     Despite the fact that Mr. Baum may have been Multiply's original founder in 2000, upon information and belief, by 2018 and 2019, Multiply operated under the direction of various high-level executives, including personnel from a then-recently acquired third-party marketing firm. Upon information and belief, Mr. Baum never executed a valid license, never exercised total control and supervision over the nature and quality of the services rendered under the Multiply Symbol, and never agreed that any use by Multiply would inure to Mr. Baum's benefit.  Rather, any trademark rights in the "X" mark belonged to Multiply, not Mr. Baum—and the registration is therefore void.

27.     In 2019, in an apparent attempt to comply with registration requirements, Mr. Baum submitted a statement of use and accompanying specimen (or illustration of that use) with the USPTO that purported to show use of the mark in commerce.  But the specimen showed use by Multiply, not Mr. Baum.  *See* Ex. B.  Indeed, Mr. Baum never personally made use of the Multiply Symbol.

28.     On January 21, 2020, the USPTO granted Mr. Baum, not Multiply, a registration for the Multiply Symbol (Reg. No. 5968076) in Class 35, in connection with advertising agency services.  *See* Ex. C.

29.     Upon information and belief, it was not until Multiply sought to sue X Corp. in 2024 that Mr. Baum assigned the rights in the Multiply Symbol to Multiply.  *See* Ex. D, Assignment and Agreement.  Mr. Baum's efforts to assign the void registration cannot cure the registration deficiencies—the trademark registration in the Multiply Symbol is void ab initio because there was not a bona fide intent to use the mark in commerce and it was not filed by the true owner or user of the mark.  The intent was always for Multiply to use the Multiply Symbol.  Multiply in fact created it and it can't rewrite history in an attempt to conjure up allegedly valid trademark rights.

**THE MULTIPLY SYMBOL FAILS TO FUNCTION AS A TRADEMARK**

30.     Even if Multiply's trademark registration is not void, Multiply owns no trademark rights in the Multiply Symbol because it fails to function as a trademark.

1  Specifically, Multiply's use of the Multiply Symbol does not identify or distinguish Multiply as

2  the source of specific goods and services, and it is therefore subject to cancellation for this

3  independent reason.

4           **MULTIPLY THE BRAND**

5           31.     Multiply holds itself out as a public relations and social media advertising

6  agency that creates and maintains advertising campaigns for various brands, predominately in

7  the beverage space.  Compl. ¶ 7.  Upon information and belief, Multiply provides its business

8  customers a full suite of social media advertising services, public relations, and creative brand

9  assistance to "multiply" their reach.

10          32.     Multiply has always identified as "Multiply," not "X."  In other words, the key

11  source-identifier for Multiply is its brand name—MULTIPLY.  Multiply presents its company

12  to the public as MULTIPLY, including but not limited to, on its website, in its FAQs, and it's

13  advertising.  For example, its website pictures the Multiply logo in the top left corner, and its

14  FAQs ask and answer the questions "Where is **Multiply** located?" and "What type of company

15  is **Multiply**?"

16

17



18

19

20

21

22

23

24

25

26

27

28

CASE NO. 3:24-CV-04402-RFL                          X CORP.'S ANSWER AND COUNTERCLAIMS

33.     Multiply also maintains its own social media pages for advertising purposes, including Instagram and LinkedIn[2] (pictured below)—both of which prominently feature the MULTIPLY name and proclaim "WE ARE MULTIPLY," alongside the black and white "multiply" logo.



---

[2]     Upon information and belief, Multiply does not maintain an account on X.

1
2
3
4
5
6
7
8
9
10
11
12



https://www.linkedin.com/company/we-are-multiply/

13
14
15
16
17

34.    Multiply further markets and presents itself to the public as "Multiply" by using catch phrases like "PR and Social Multiplied" and "Ready to Multiply?," all of which appear on portions of its website: https://www.multiply.us/.  Its key identity is Multiply, and its consumers know it as Multiply.

18
19
20
21
22
23
24
25
26
27
28

9

35.     At most, Multiply uses the Multiply Symbol—the universal symbol for multiplication—in a non-trademark fashion, as an ornamental design that is descriptive of its true name and identity—Multiply.  If and when the Multiply Symbol is used, it appears alongside (and descriptive of) the "Multiply" name.  Multiply's use of the Multiply Symbol is in effect a gimmick relating to the long-used and historically routed mathematical symbol for multiplication.  In fact, Plaintiff concedes that this relation was the impetus for the design of the Multiply Symbol. *See* Compl. ¶ 28 ("Baum created a stylized 'X' that is not only visibly appealing, but also implicitly associated with a multiplication symbol[.]").  But there is absolutely no evidence that consumers look at the standalone Multiply Symbol , and automatically identify Multiply as its source.

36.     Everyday expressions and symbols that commonly adorn products are normally not perceived as identifying the source of the goods.  The marketing and advertising industry is flooded with other third-party entities that use the word "Multiply" along with a multiplication sign (examples of which are seen below).  For example, global marketing communications "Multiply Agency," who has worked with major food and beverage brands, utilizes an "M" logo with an "X" or multiplication symbol in the middle of the M.  Another company named Multiply, who provides software to help manage marketing campaigns, also uses an "X" logo alongside its "Multiply" name.  "Multiplied By," a creative ad agency, also uses an "X" symbol to advertise its services.  And yet a fourth company, "Multiply Digital," is a performance based digital advertising agency that incorporates an "X" into its logo as well.  These third-party uses underscore that any use of "X" by Multiply in its advertising does not, and cannot, identify Multiply as the source of any goods and services.

| | | | |
|---|---|---|---|
|  |  |  |  |
| https://www.multiplyagency.com/ | https://www.multiply.co/ | https://multipliedby.com/ | https://multiplydigital.com.au/ |

37.     It is not surprising that businesses named "Multiply" use an "X" in their marketing— "X" is the universal multiplication symbol that dates back to 1618.  Multiplication is a mathematical process inherently tied to the success of any advertising and marketing campaign—multiplying a client's views, reach, and potential customer base.  Consumers will therefore view the Multiply Symbol alongside the MULTIPLY name as mere decoration or ornamentation, and not as a source-identifying symbol.

38.     Multiply claims that its employees *used to* refer to Multiply as "X," but trademark law is unconcerned with Multiply's employees who may have (and apparently no longer) identified the company as "X."  *See* Compl. ¶¶ 10, 88. That is because the function of a trademark is to serve as a source identifier for *consumers*.  Moreover, this evidences Multiply's explicit willingness to abandon its use of the Multiply Symbol.

**X CORP. IS NOT LIABLE FOR TRADEMARK INFRINGEMENT**

39.     Without a valid trademark, Multiply cannot assert a claim for trademark infringement.  Even if Multiply had valid trademark rights, no consumer, let alone Multiply's sophisticated consumers, is likely to be confused by X Corp.'s use of its own distinct stylized X mark, alongside a fully saturated market of "X" trademarks in Class 35.

**CONSUMERS ARE NOT LIKELY TO BE CONFUSED BETWEEN MULTIPLY AND X CORP.**

40.     X Corp. owns and operates a well-known online social networking platform and mobile application (the "X Platform"), referred to as the "global town square," where the public gathers to live its life in real-time.  The X Platform is both a technology platform and telecommunications service where registered users can upload, view and share information, images, photos, audio, video, entertainment and other content by publishing public posts, private messages, and in other online communities or groups.  X continues to be the top platform for curious and influential people worldwide, who use it daily to follow their passions, especially during important moments.  The X Platform also serves as an interactive

billboard, allowing its users to disseminate advertisements and promotions, and allowing its users the ability to track metrics related to that dissemination.

41.   The X Platform predominately operates as a mobile application (the "X App") which is available through the Apple App Store (for iOS devices) and the Google Play Store (for Android devices).   X is not just another app—it's becoming the "everything app," seamlessly uniting experiences into one interface, for everyone.   X Corp. also maintains a website where services in connection with particular features of the X Platform are available and distributed by X Corp.

42.   Multiply and X Corp.'s concurrent but varying uses of an "X" symbol are where any similarities end.   Multiply and X Corp. use different marks, with different meanings, in different colors, for different services to different customers, with different advertising methods, and different channels of trade.

43.   ***The marks are different***.   The overall impression of X Corp.'s applied-for X mark and the Multiply Symbol are incredibly different. The Multiply Symbol is composed of a multi-dimensional "X," with varying lines in a "V" formation used to comprise an "X" as a multiplication symbol.   On the other hand, X Corp.'s applied-for mark is a simple, modern, unicode letter intended to leave a modern look and feel.   In terms of appearance, X Corp.'s applied-for mark, as shown below, is as, or more, different than the Multiply Symbol when compared to all of the other marks with which Multiply currently peacefully coexists.

| X<br>**X Corp.'s Applied-For Mark in Class 35** | Ser. No. 98295593 | Filed Dec. 1, 2023 | Business data analysis; promotional services; business consulting and information services; business, consumer, and market research |
| --- | --- | --- | --- |

44.   X Corp. uses its "X" mark as a true source identifier.   X Corp. is "X"—it is the name of the service, it is part of each of X Corp.'s materials, it is the logo for the X App and X Platform, and it is the brand identity.   In contrast, Multiply utilizes its Multiply Symbol as a mere add-on to its brand identity, "Multiply," as a sort of gimmick to invoke the idea of

multiplication, but as nothing more.  Upon information and belief, consumers simply do not identify Multiply as X.

45.     The letter "X" has many different meanings, ranging from social movements, to arbitrary unknowns, to mathematical symbols.  And here, Multiply and X Corp. utilize their respective X designs in very different ways with very different meanings.  The marks at issue rely on entirely distinct connotations of the letter "X."  Multiply is attempting to use its Multiply Symbol to evoke *multiplication*, whereas X Corp. is using its "X" mark to represent the capability of the letter "X" to represent an unknown variable, in support of X Corp.'s mission that its X App will eventually become the "everything app," and "X" could stand for any one of its given functionalities.

46.     Multiply's admission in its Complaint that it has "ceased referring to itself as 'X'" sometime over the course of the last year only further supports the conclusion that its use of "X" differs from X Corp's use and meaning of its own X-mark.  *See* Compl. ¶¶ 48, 88.  Multiply was able to quickly "cease[]" use of "X" because as Multiply's advertisements make clear, "[they] are **Multiply**," not "X" (emphasis added).

47.     ***The Multiply Symbol is a weak mark***.  Any potential for confusion is further obliterated by the hundreds of other X-formative trademarks offering services in greater proximity to Multiply than X Corp.'s.  When a trademark operates in a crowded field of similar marks, it is entitled to "thin" trademark rights, or a narrow scope of protection.  This "thin" protection results from the relevant consumer's ability to distinguish marks from one another; when the field of marks is crowded, even the slightest difference in appearance is sufficient to tip off a consumer that the source of the goods or services is different.  Here, that means that consumers are more than capable of distinguishing between Multiply's bold, typically neon yellow, block, multi-line "X" design, with X Corp.'s simple unicode "X" in connection with different services.

48.     In Class 35 alone, there are over 500 trademarks that are actively registered with the USPTO for uses of X-formative marks—many of which offer the same advertising services

that Multiply provides.  Below is just a sampling of some of the companies and trademarks

offering advertising services under their own actively registered "X" marks—most of which

offer services far closer in similarity to Multiply's than X Corp.'s, and most of which are

visually closer in appearance to Multiply's Multiply Symbol than X Corp.'s applied-for mark

| Mark | Reg. No. | Reg. Date[3] | Sampling of Goods/Services |
|---|---|---|---|
|  | 4,725,727 | April 28, 2015* | Advertising; marketing; advertising agency; development of advertising and marketing concepts; advertising on the internet for others |
|  | Reg 5421041 | March 13, 2018* | Advertising, public relations services |
|  | 5,523,280 | July 24, 2018* | Advertising services |
| X SocialMedia | 5,554,203 | Sept. 4, 2018* | Advertising services |
|  | 5,588,436 | Oct. 23, 2018* | Advertising; commercial business management; public relations services; marketing services; sales promotion and advertising |
|  | 5,777,374 | June 11, 2019* | Promoting the goods and services of others; promoting the goods and services of others by arranging sponsorships for others |
|  | 5,937,435 | Dec. 17, 2019* | Branding services, namely, consulting, development, management and marketing of brands for businesses and/or individuals |
|  | 6,050,141 | May 12, 2020 | Brand concept and brand development services for corporate and individual clients; online customer-based social media brand marketing services; providing marketing consulting services in the field of social media |
|  | 6,166,812 | Oct. 6, 2020 | Advertising agencies, namely, promoting the goods and services of others |

[3] *Asterisk signifies that the mark was registered before the Multiply Symbol was registered.

| | Registration | Date | Services |
|---|---|---|---|
|  | 6,418,414 | July 13, 2021 | Advertising services, namely, ad campaign serving, managing, trafficking and optimizing; advertising services, namely, tracking and reporting on ad performance and metrics |
|  | 6,424,881 | Jul. 20, 2021 | Advertising services; business marketing services; on-line advertising and marketing services; on-line customer-based social media brand marketing services |
|  | 6,535,858 | Oct. 26, 2021 | Sponsorship consulting; advertising and publicity services, namely promoting the goods, services, brand identity and commercial information and news of third parties through print, audio, video, digital, and on-line media; analyzing data to gain insight regarding consumer perception, determine business growth measures and to determine social media marketing effectiveness |
|  | 6,869,081 | Oct 11, 2022 | Advertising and marketing; business marketing services; consulting services in the field of internet marketing |
|  | 6,914,800 | Dec. 6, 2022 | Promoting the computerized sale of goods and services of others, made via computer terminals and networks by featured advertisements located on a gaming website and in featured games |
|  | 6,932,602 | Dec. 27, 2022 | Advertising services; business management |
|  | 7,055,440 | May 16, 2023 | Advertising and facilitating customer incentive reward program, namely, a customer loyalty program for providing product discounts |
|  | 7,089,460 | June 27, 2023 | Advertising, marketing and promotional services, namely, development of advertising campaigns for print media, web pages, the internet, and television |
|  | 7,192,010 | Oct. 17, 2023 | Advertising services, namely, presentation of advertising services on self-propelled electric vehicles |

49.     This sampling of registrations pales in comparison to the full list of X-formative marks registered in International Class 35 for advertising services. Multiply's allegation that it is "the *only* registered trademark of a stylized letter X that is used...in the social media advertising

industry," Compl. ¶ 36 (emphasis in original), is demonstrably false.  X Corp.'s use and adoption of its own "X" trademark is no different than the many other "X" trademarks that existed both before and after Multiply decided to adopt the ornamental Multiply Symbol.  In fact, certain uses of "X" by advertising agencies pre-date Multiply's trademark filing.  Further, Multiply has not taken any steps to oppose any of the third-party X registrations that post-date its own use in commerce.  Instead, Multiply has peacefully co-existed with all of these marks.

50.    Multiply knew about the vast number of third-party X marks when it registered its Multiply Symbol.  The trademark examiner found thousands and reviewed hundreds of trademarks that use the letter "X" as reflected in its summary filing with the USPTO.  *See* Ex. E, Examiner's XSearch Search Summary.  Yet as Multiply notes in its own Complaint—the trademark examiner did not think that any third-party marks would preclude registration of the Multiply Symbol.  *See* Compl. ¶ 31.  This conclusion was made despite the fact that third-party advertising agencies used "X" marks bearing similarities to the Multiply Symbol because consumers will not be confused.

51.    Defendant has also filed seven applications to register the X wordmark, as well as seven applications for its X design mark, with the USPTO for its varying goods and services.  Those applications are presently pending before the USPTO.  Despite Multiply's claims that X Corp.'s use of its "X" design mark somehow infringes its rights in the Multiply Symbol, the trademark examiner has to date disagreed, and did not identify the Multiply Symbol as precluding any of X Corp.'s trademark registrations.

52.    ***The services are not similar.***  The X App is available to everybody.  The most common features of the X Platform are available to X Corp.'s diverse customer segment free of charge.  The X Platform also offers business-oriented services at a variety of price points through sales agents, at tradeshows (such as CES), at industry events (such as NewFronts), on the X App, and through partnership channels.  While X Corp. offers its business users the opportunity to post advertisements and place ad spend behind their advertisements, X Corp. is not an advertising agency, it's a social media platform.

53.     Unlike X Corp., whose platform and services are available to the general public and businesses in all different industries, Multiply works predominately with popular beverage companies like Arizona, Liquid Death, Peroni, and Blue Moon, and select customers in the food and technology industries.  Multiply maintains on its website that it is "not an old school ad agency," but instead is "an integrated PR and Social agency moving at the speed of culture." *See supra* ¶ 33. Multiply offers a host of capabilities to its clients including: data, insights, influencer programs, a future forward thinking creative studio, and web practices to help brands understand the metaverse.

54.     While X Corp. may provide certain ancillary advertising services to its business customers, those services clearly emanate from and are in connection only with advertising on the X platform—not the creation of full marketing campaigns, strategy, and mass-media that Multiply provides its customers.  X Corp.'s clients are ultimately responsible for the creation of their own advertising or working with their own marketing agencies for creation and strategy.  X Corp. is not a full-service advertising company that offers a full suite of marketing, public relations, and advertising services.

55.     ***The customers are sophisticated***.  As Multiply admits, its clients consist of "the largest and most well-known brands globally, such as major breweries, wineries, and soda manufacturers." *See* Compl. ¶ 7.  These brands include Peroni, Corona, Basil Hayden, and Arizona. Major corporations such as these have extensive experience working with a variety of advertising and marketing agencies for miscellaneous campaigns, and are capable of doing sufficient due diligence to understand the identity of the companies they are working with.  These sophisticated brands would not view Multiply's Multiply Symbol and suddenly believe the beverage-focused advertising agency is offering a renowned social networking platform serving as a "global town square."  Nor, would consumers believe that the renowned social networking platform is now offering a niche, beverage-focused advertising service under the name Multiply.

56.     ***The services are not in close proximity***.  Advertising agencies are not competitors of X Corp.  Instead, X Corp. partners with and/or features different advertising agencies on its

platform, to offer services to its customers that X Corp. does not provide.  Ultimately, however, X Corp. does not offer in-house creative teams and ideas like Multiply alleges it offers.

57.  ***X Corp. acted in good faith***.  X Corp. adopted its "X" mark in good faith.  The X App, previously known as "Twitter," was acquired by Elon Musk-owned holding companies in October 2022.  The company later rebranded to "X" in July 2023, in part because of the sentimental value Mr. Musk associates with X, dating back to his previous involvement with X.com and PayPal in 2000.  The history between X Corp.'s founder and the letter "X" long pre-date Multiply's first use of its Multiply Symbol.  In an October 2022 Twitter post, Mr. Musk posted about his desire to create an X App.  In fact, given the decades-long history between X Corp.'s founder and use of the letter "X," it can hardly be said that Twitter's rebrand to X was shocking—only fulfilling earlier promises to create an "X" app.

58.  ***There is no evidence of confusion***.  Multiply has co-existed with the X Platform for over a year and cannot point to a single instance of swayed customer purchases, decisions, or other instances of actual confusion.  Even crediting Multiply's unsupported allegations that its clients "inquired about the similarities between the logos," Compl. ¶ 78, inquiries about similarity are not actual confusion.  These interactions just reaffirm that customers did not believe they were dealing with X Corp., and knew instead they were speaking and dealing with Multiply.

59.  It is implausible that a consumer would believe that X, the social networking platform, is Multiply, the marketing agency, or vice versa, especially when there are hundreds of X-trademarks that offer goods and services in Class 35.  Multiply is therefore unable to establish a claim for trademark infringement, because its Multiply Symbol is entitled to little, if any, trademark protections given its weak standing in the marketplace, for differing services, to differing customers, with differing messages and meanings.

### COUNT I

### Cancellation of Trademark as Void Ab Initio (15 U.S.C. §§ 1119, 1064)

60.  Counterclaim-Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

61.     Mr. Baum did not have a bona fide intent to use the Multiply Symbol in commerce when he filed an intent to use application with the USPTO. *See* TMEP § 1101.

62.     Mr. Baum is not the sole or true owner of the Multiply Symbol.

63.     Mr. Baum has never used the Multiply Symbol in commerce.

64.     Mr. Baum was not the proper applicant or registrant in the Multiply Symbol.

65.     Each of these facts are, on their own, a sufficiently independent basis to render the registration for the Multiply Symbol void ab initio.

66.     The registration for the Multiply Symbol is therefore void ab initio because Mr. Baum (1) did not have a bona fide intent to use the trademark in commerce; (2) was not the true owner of the Multiply Symbol; and/or (3) never used the Multiply Symbol in commerce.

67.     Such defects are incurable. *See* TMEP § 1201.02(c); 37 CFR § 2.71(d).

68.     Section 37 of the Lanham Act gives a federal district court the power to determine the right to registration, order cancelation of registrations, and otherwise rectify the trademark register. See 15 U.S.C. § 1119.

69.     The Court should cancel Multiply's federal trademark registration for the Multiply Symbol, pursuant to 15 U.S.C. §§ 1119, 1064 and award X Corp. damages pursuant to 15 U.S.C. § 1120.

## **COUNT II**

### **Cancellation of Trademark Based on Its Failure to Function as a Mark (15 U.S.C. §§ 1119, 1064)**

70.     Counterclaim-Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

71.     The letter "x" has been the universal symbol for multiplication for centuries, and the Multiply Symbol is an ornamental design of the Multiply brand, that does not identify the source of its services or distinguish them from the services of others.

72.     The use of a multiplication symbol alongside the "Multiply" name is used by many marketing and advertising firms in connection with and alongside their brand name.

73.     The relevant consuming public does not understand the Multiply Symbol to be a source identifier for Multiply or its services.

74.     The Multiply Symbol's failure to function as a source identifier prevents registration of the Multiply Symbol.

75.     Section 37 of the Lanham Act gives a federal district court the power to determine the right to registration, order cancelation of registrations, and otherwise rectify the trademark register. *See* 15 U.S.C. § 1119.

76.     The Court should cancel Multiply's federal trademark registration for the Multiply Symbol, pursuant to 15 U.S.C. §§ 1119, 1064 because the Multiply Symbol does not operate to indicate source or origin of Multiply's services, and therefore fails to function as a trademark, particularly in light of the other firms using similar stylized X marks.

## **COUNT III**

### **Declaratory Judgment of Non-Infringement**

77.     Counterclaim-Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

78.     Multiply's Complaint presents an actual and ripe controversy between the parties with genuine adverse interests.

79.     This Court should declare that there is no infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114, section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), under federal common law, and under state statutory and common law because, *inter alia*, Multiply cannot prove ownership of a valid trademark and because there is no likelihood of confusion.

## X CORP.'S ANSWER TO THE AMENDED COMPLAINT

Counterclaim-Plaintiff and Defendant, X Corp. (hereinafter "Defendant" or "X Corp.") by and through undersigned counsel, hereby submits the following Answer to Plaintiff and Counterclaim-Defendant Multiply's (hereinafter "Plaintiff" or "Multiply") Complaint (Dkt. 1).

### General Answer

All allegations in the Complaint are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, or the like that are contained in the averment or in the Complaint as a whole. X Corp. denies all allegations to the extent that they assert or suggest, individually or collectively, that X Corp. is liable to Multiply.  Except as otherwise indicated, the responses herein are made on personal knowledge with respect to allegations made specifically relating to X Corp., and on information and belief with respect to all other allegations (including based on information obtained from documents).  X Corp. denies any allegation of the Complaint not expressly addressed, including any averments in the headings, subheadings, and footnotes of the Complaint.

X Corp. reserves the right to amend this Answer and to assert additional defenses or to supplement, alter, or change this Answer, or to assert any counterclaims, upon ascertaining more definite facts during and upon completion of its investigation and discovery.

### SUBSTANCE OF THE ACTION[4]

1.      X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and on that basis denies them, except admits that Multiply is a registered limited liability company registered in Virginia and presently owns a registration for the Multiply Symbol.

2.      X Corp. admits the allegations in Paragraph 2.

3.      Paragraph 3 of the Complaint states legal conclusions to which no response is required.

4.      Paragraph 4 of the Complaint states legal conclusions to which no response is required.

---

[4]      Throughout this Answer, Defendant does not adopt, and expressly denies, any implications of the headings contained in the Amended Complaint.

5.       Paragraph 5 of the Complaint states legal conclusions to which no response is required.

## MULTIPLY'S "GENERAL ALLEGATIONS"

6.       X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and on that basis denies them.

7.       Upon information and belief, X Corp. admits that Multiply appears to be a social media and public relations agency that creates social media advertising campaigns, predominately for beverage companies and manufacturers, and otherwise denies the allegations in Paragraph 7.

8.       X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint.  X Corp. further does not believe Multiply has operated under or used the Multiply Symbol as a trademark, and on that basis denies the allegations in Paragraph 8.

9.       X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint, and on that basis denies them.

10.       X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and on that basis denies them.

11.       Upon information and belief, X Corp. admits that Multiply appears to be a social media and public relations agency that creates marketing campaigns on X, Facebook, Instagram, and TikTok, and otherwise denies the allegations in Paragraph 11 of the Complaint.

12.        X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint, and on that basis denies them.

13.       X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint, and on that basis denies them.

14.       X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint, and on that basis denies them.

15.       X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint, and on that basis denies them.

16.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint, and on that basis denies them.

17.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of all of the allegations in Paragraph 17 of Complaint, and on that basis denies them.  X Corp. admits that it offers its customers certain analytics, and otherwise denies the allegations in Paragraph 17 of the Complaint.

18.     X Corp. denies the allegations in Paragraph 18 of the Complaint.

19.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of Complaint, and on that basis denies them.  X Corp. further specifically denies the allegations in Paragraph 19 of the Complaint regarding the use of an X Corp. in-house creative team.

20.     X Corp. admits that customers have access to analytics and data integration tools on the X Platform, but otherwise denies the allegations in Paragraph 20 of the Complaint.

21.     X Corp. denies the allegations in Paragraph 21 of the Complaint.

22.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint, and on that basis denies them.

23.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of all of the allegations in Paragraph 19 of Complaint, and on that basis denies them except that X Corp. admits Multiply selectively quotes from the registration page for the Beer Wine & Spirits Summit, and avers that it does not directly compete with Multiply.

24.      X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint, and on that basis denies them.

25.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint, and on that basis denies them.

26.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint, and on that basis denies them.

27.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint, and on that basis denies them.

28.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint, and on that basis denies them, except that X Corp. admits that "X" is a multiplication symbol.

29.     Upon information and belief, X Corp. admits that an intent to use application was filed with the USPTO on March 9, 2018, for a stylized "X" symbol (the "Multiply Symbol"), and otherwise denies the allegations in Paragraph 29 of the Complaint.

30.     X Corp. denies the allegations in Paragraph 30 of the Complaint. Upon information and belief, Baum did not assign its interests in the Multiply Symbol until March 12, 2024.

31.     Upon information and belief, X Corp. admits the allegations in Paragraph 31 of the Complaint.

32.     Upon information and belief, X Corp. admits the allegations in Paragraph 32 of the Complaint.

33.     Upon information and belief, X Corp. admits the allegations in Paragraph 33 of the Complaint.

34.     Upon information and belief, X Corp. admits the allegations in Paragraph 34 of the Complaint.

35.     X Corp. admits that Multiply quotes and misleadingly adds emphasis to the goods and services description on the registration certificate for the Multiply Symbol.

36.     X Corp. denies the allegations in Paragraph 36 of the Complaint.

37.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint, and on that basis denies them

38.      Upon information and belief, X Corp. admits that Mr. Baum attempted to assign his rights in the Multiply Symbol, but avers that said assignment was not effective because the trademark registration was void ab initio.

39.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint, and on that basis denies them.

40.      X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint, and on that basis denies them.

41.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint, and on that basis denies them.

42.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint, and on that basis denies them.

43.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint, and on that basis denies them.

44.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint, and on that basis denies them.

45.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Complaint, and on that basis denies them.

46.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Complaint, and on that basis denies them, except to admit that as of the date of this filing, the rotating Multiply Symbol is available on its homepage at https://www.multiply.us/.

47.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Complaint, and on that basis denies them.

48.     X Corp. denies the allegations in Paragraph 48 of the Complaint.

49.     Upon information and belief, X Corp. admits the allegations in Paragraph 49 of the Complaint.

50.      X Corp. admits the allegations in Paragraph 50 of the Complaint.

51.     X Corp. denies the allegations in Paragraph 51 of the Complaint, except admits that it announced a rebrand from Twitter to "X" in July 2023.

1    52.    X Corp. denies the allegations in Paragraph 52, except admits that Elon Musk was

2    involved in the decision to rebrand Twitter as "X."

3    53.    X Corp. admits the allegations in Paragraph 53, except that it now objects that

4    Multiply's Multiply Symbol is not a trademark entitled to any protection.

5    54.    X Corp. admits that allegations in Paragraph 54 of the Complaint and avers that there

6    was no need to contact Multiply.

7    55.    X Corp. admits the allegations in Paragraph 54 and avers that there was no need to

8    license Multiply's claimed "X Mark."

9    56.    X Corp. denies the allegations in Paragraph 56 of the Complaint, except admits that it filed

10   seven trademark applications in September 2023 for its X Mark in seven different classes.

11   57.    X Corp. denies the allegations in Paragraph 57 of the Complaint, except admits that both

12   the X Mark and Multiply Symbol use varying lines, graphics, and/or shapes to make two intersecting lines,

13   and avers that X Corp. uses the letter X, whereas Multiply uses the 'X' multiplication symbol.

14   58.    X Corp. denies the allegations in Paragraph 58, except admits that a rhomboid is a

15   geometric shape with equal and parallel opposite sides, and equal opposite angles.

16   59.    A response to Paragraph 59 of the Complaint would implicate attorney-client

17   communications, and on that basis, X Corp. declines to respond to Paragraph 59 of the Complaint.

18   60.    A response to Paragraph 60 of the Complaint would implicate attorney-client

19   communications, and on that basis, X Corp. declines to respond to Paragraph 60 of the Complaint.

20   61.    X Corp. denies the allegations in Paragraph 61 of the Complaint, except admits that in

21   December 2023 X Corp. filed multiple trademark applications for the stylized version of its X Mark,

22   including one application for services in Class 35, which in part included "business data analysis" and

23   "promotional services," among other services.

24   62.    A full response to Paragraph 62 of the Complaint would implicate attorney-client

25   communications, and on that basis, X Corp. declines to respond to Paragraph 62 of the Complaint, except

26   that X Corp. admits it identified Multiply's Multiply Symbol as one of 500-plus X-formative registered

27   trademarks registered in Class 35 as part of a filing which was publicly filed on December 4, 2023 in Case

28

1   No. 6:23-cv-01903-JA-EJK in the Middle District of Florida, at Dkt. No. 26. X Corp. denies the allegation

2   its use of its X mark is infringing.

3       63.     Paragraph 63 of the Complaint contains a legal conclusion to which no response is

4   required, except that X Corp. admits the parties agreed to a two-month standstill.

5       64.     X Corp. denies the allegations in Paragraph 64 of the Complaint, and further contends that

6   Paragraph 64 of the Complaint contains legal conclusion to which no response is required.

7       65.     Paragraph 65 of the Complaint contains legal conclusions to which no response is required.

8       66.     X Corp. admits the allegations in Paragraph 66 of the Complaint, but avers that there is

9   a connection insofar as Twitter is now X.

10      67.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the

11  allegations in Paragraph 67 of the Complaint, and on that basis denies them, except admits that X is a

12  universal symbol for multiplication.

13      68.     X Corp. admits that Multiply selectively quotes from a webpage available at

14  https://about.x.com/en/who-we-are/brand-toolkit, and otherwise denies the allegations in Paragraph 68.

15      69.     X Corp. denies the allegations in Paragraph 69 of the Complaint.

16      70.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the

17  allegations in Paragraph 70 of the Complaint, and on that basis denies them, except admits that Multiply

18  selectively included a screenshot of a banner that reads "X Ads measurement" presently available at

19  https://business.x.com/en/advertising/measurement.html.

20      71.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the

21  allegations in Paragraph 71 of the Complaint, and on that basis denies them.

22      72.     X Corp. denies the allegations in Paragraph 72 of the Complaint. Paragraph 72 further

23  contains legal conclusions to which no response is required, except that X Corp. admits that it offers a

24  "Brand toolkit" which Multiply included a screenshot of.

25      73.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the

26  allegations in Paragraph 73 of the Complaint, and on that basis denies them.

27

28

74.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Complaint, and on that basis denies them.

75.     Paragraph 75 of the Complaint contains legal conclusions to which no response is required. X Corp. further lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the Complaint, and on that basis denies them.

76.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Complaint, and on that basis denies them.

77.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Complaint, and on that basis denies them.

78.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of the Complaint, and on that basis denies them.

79.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 of the Complaint, and on that basis denies them.

80.     Paragraph 80 of the Complaint contains legal conclusions to which no response is required. X Corp. further lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 of the Complaint, and on that basis denies them.

81.      Paragraph 81 of the Complaint contains legal conclusions to which no response is required. X Corp. further lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 of the Complaint, and on that basis denies them.

82.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the Complaint, and on that basis denies them.

83.     X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 of the Complaint, and on that basis denies them.

84.     Paragraph 84 of the Complaint contains legal conclusions to which no response is required. X Corp. further lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 of the Complaint, and on that basis denies them.

1    85.    Paragraph 85 of the Complaint contains legal conclusions to which no response is required.

2    X Corp. further lacks knowledge or information sufficient to form a belief as to the truth of the allegations

3    in Paragraph 85 of the Complaint, and on that basis denies them.

4    86.    Paragraph 86 of the Complaint contains legal conclusions to which no response is required.

5    X Corp. further lacks knowledge or information sufficient to form a belief as to the truth of the allegations

6    in Paragraph 86 of the Complaint, and on that basis denies them.

7    87.    Paragraph 87 of the Complaint contains legal conclusions to which no response is required.

8    88.    X Corp. lacks knowledge or information sufficient to form a belief as to the truth of the

9    allegations in Paragraph 88 of the Complaint, and on that basis denies them.

10   89.    Paragraph 89 of the Complaint contains legal conclusions to which no response is required.

11   X Corp. further lacks knowledge or information sufficient to form a belief as to the truth of the allegations

12   in Paragraph 89 of the Complaint, and on that basis denies them.

13   90.    Paragraph 90 of the Complaint contains legal conclusions to which no response is required.

14   91.    Defendant denies the allegations in Paragraph 91 of the Complaint.

15   92.    Paragraph 92 of the Complaint contains legal conclusions to which no response is

16   required.

17   93.    Paragraph 93 of the Complaint contains legal conclusions to which no response is

18   required, except that X Corp. admits it hired a new CEO in 2023.

19   94.    A full response to Paragraph 94 of the Complaint would implicate attorney-client

20   communications, and on that basis, X Corp. declines to respond to Paragraph 94 of the Complaint, and

21   further denies that it's X mark is an infringing mark.

22   95.    X Corp. denies the allegations in Paragraph 95 of the Complaint, except to admit that

23   X Corp. has never paid a royalty or any other renumeration to Multiply, and avers that there was, and

24   is, no need to.

25   96.    Paragraph 96 of the Complaint contains legal conclusions to which no response is

26   required.

27

28

97.     Paragraph 97 of the Complaint contains legal conclusions to which no response is required.

**MULTIPLY'S FIRST CLAIM FOR RELIEF**

98.     X Corp. incorporates by reference its answers to all previous paragraphs as though fully stated herein.

99.     X Corp. denies the allegations in Paragraph 99 of the Complaint.

100.    X Corp. denies the allegations in Paragraph 100 of the Complaint.

101.     X Corp. denies the allegations in Paragraph 101 of the Complaint.

102.    X Corp. denies the allegations in Paragraph 102 of the Complaint.

103.    X Corp. denies the allegations in Paragraph 103 of the Complaint.

104.    X Corp. denies the allegations in Paragraph 104 of the Complaint.

105.    X Corp. denies the allegations in Paragraph 105 of the Complaint.

106.    X Corp. denies the allegations in Paragraph 106 of the Complaint and specifically denies Multiply is entitled to any relief.

107.    X Corp. denies the allegations in Paragraph 107 of the Complaint and specifically denies Multiply is entitled to any relief.

**MULTIPLY'S SECOND CLAIM FOR RELIEF**

108.    X Corp. incorporates by reference its answers to all previous paragraphs as though fully stated herein.

109.    X Corp. denies the allegations in Paragraph 109 of the Complaint.

110.    X Corp. denies the allegations in Paragraph 110 of the Complaint.

111.     X Corp. denies the allegations in Paragraph 111 of the Complaint.

112.    X Corp. denies the allegations in Paragraph 112 of the Complaint.

113.    X Corp. denies the allegations in Paragraph 113 of the Complaint and specifically denies Multiply is entitled to any relief.

114.    X Corp. denies the allegations in Paragraph 114 of the Complaint and specifically denies Multiply is entitled to any relief.

1

**MULTIPLY'S THIRD CLAIM FOR RELIEF**

2      115.    X Corp. incorporates by reference its answers to all previous paragraphs as though

3  fully stated herein.

4      116.    X Corp. denies the allegations in Paragraph 116 of the Complaint.

5      117.    X Corp. denies the allegations in Paragraph 117 of the Complaint.

6      118.    X Corp. denies the allegations in Paragraph 118 of the Complaint.

7      119.    X Corp. denies the allegations in Paragraph 119 of the Complaint and specifically

8  denies Multiply is entitled to any relief.

9      120.    X Corp. denies the allegations in Paragraph 120 of the Complaint and specifically

10  denies Multiply is entitled to any relief.

11

**MULTIPLY'S FOURTH CLAIM FOR RELIEF**

12      121.    X Corp. incorporates by reference its answers to all previous paragraphs as though

13  fully stated herein.

14      122.    X Corp. denies the allegations in Paragraph 122 of the Complaint.

15      123.    X Corp. denies the allegations in Paragraph 123 of the Complaint.

16      124.    X Corp. denies the allegations in Paragraph 124 of the Complaint and specifically

17  denies Multiply is entitled to any relief.

18

**RESPONSE TO PRAYER FOR RELIEF**

19            WHEREFORE, in view of the foregoing, X Corp. denies that Multiply is entitled to any

20  relief whatsoever, and respectfully submits that the Complaint should be dismissed with prejudice.

21

**ADDITIONAL DEFENSES**

22      As additional defenses, Defendant alleges, asserts, and states the following, which apply to

23  each and every cause of action asserted in the Complaint to which such defense may be applicable.  By

24  virtue of alleging these further defenses, Defendant does not assume any burden of proof, persuasion,

25  or production not otherwise legally assigned to it.  Defendant also does not concede that facts contrary

26  to one or more of the statements that follow would support liability as to any or all of them.  Defendant

27

28

asserts and expressly reserves all rights to assert any and all other defenses as appropriate, including as may be revealed during the course of discovery.

1.     Multiply's Complaint fails to state a claim upon which relief can be granted.

2.     To the extent Multiply is seeking monetary damages, Multiply's claim is barred, in whole or in part, by Multiply's failure to mitigate damages.

3.     Multiply has sustained no harm, irreparable or otherwise, due to X Corp.'s actions.

4.     Multiply's claim for enhancing damages and fees are barred by Multiply's failure to allege aggravating circumstances sufficient to support the award of such damages or fees. Such an award or fees under 15 U.S.C. § 1117 is permissible only in "exceptional cases," which Multiply has failed to allege here.

5.     X Corp. has not infringed and currently does not infringe any alleged trademark and is not liable for any infringement.

6.     Multiply's Complaint fails because X Corp. was not the actual or proximate cause of any damage to Multiply.

7.     Multiply's claims are barred as its alleged trademark is invalid on one or more grounds, including but not limited to those set forth in the Lanham Act.

8.     Multiply's claims are barred by the doctrine of trademark abandonment.

9.     Multiply's claimed rights in and enforcement of its Multiply Symbol, are invalid and unenforceable for failure to comply with one or more of the requirements of registration or trademark protection as set forth by the United States Patent and Trademark Office, federal law, and/or the failure to comply with all relevant regulations related thereto.

10.    Multiply's claims are barred in light of its conduct based on the doctrine of unclean hands.

11.    Multiply's claims are barred in light of its conduct based on the doctrine of acquiescence.

## PRAYER FOR RELIEF

WHEREFORE, Defendant asks for judgment on Multiply's claims as follows:

1.     Judgment in favor of Defendants/Counter Multiply and against Multiply/ Counter Defendant on all claims;

1      2.      An award by the Court to Defendant of its costs in this case;

2      3.      An award by the Court to Defendant of its reasonable attorneys' fees in this case;

3      4.      That the USPTO be directed to invalidate Multiply's registration in the Multiply

4 Symbol; and

5      5.      An award by the Court to Defendant of any other relief that the Court considers just and

6 proper.


Dated: August 30, 2024          */s/ Megan K. Bannigan*
                            Megan K. Bannigan

                            DAVID H. BERNSTEIN
                            Debevoise & Plimpton LLP
                            650 California Street
                            San Francisco, CA 94108
                            Tel: (415) 738-5700
                            Fax: (415) 644-5628
                            dhbernstein@debevoise.com

                            MEGAN K. BANNIGAN (admitted *pro hac vice*)
                            JARED I. KAGAN (admitted *pro hac vice*)
                            NICOLE M. FLORES (admitted *pro hac vice*)
                            DANIEL N. COHEN (admitted *pro hac vice*)
                            Debevoise & Plimpton LLP
                            66 Hudson Boulevard
                            New York, NY 10001
                            Tel: (212) 909-6000
                            Fax: (212) 909-6836

                            *Attorneys for Defendant and Counterclaim-Plaintiff*
                            *X CORP.*

1

## CERTIFICATE OF SERVICE

        I hereby certify that a true and correct copy of the foregoing document was filed with the Court and electronically served through the CM-ECF system which will send a notification of such filing to all counsel of record.

DATED: August 30, 2024                    _/s/ Megan K. Bannigan_____

                                                            Megan K. Bannigan